Case 2:24-cv-00224   Document 27   Filed on 10/15/25 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
October 15, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHARLES BOARMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:24-cv-00224 |
| | § | |
| FRANK BISIGNANO, Commissioner of Social Security, | § § § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

In this social security appeal, Plaintiff Charles Boarman challenges the final decision of the Commissioner of the Social Security Administration ("Commissioner" of the "SSA") that Plaintiff is not disabled and thus not entitled to disability and disability insurance benefits. For reasons discussed below, and having considered the parties' submissions, the record, and the applicable law, the district court should AFFIRM the decision of the Commissioner and DISMISS this case with prejudice.

*A. Proceedings.*

Plaintiff applied for disability and disability insurance benefits in January 2022. (Doc. No. 22, p. 2; Doc. No. 24, p. 2.) He alleged that he had been disabled since December 4, 2020, because of post-traumatic stress disorder ("PTSD"), depression, bipolar disorder, substance abuse, failed back syndrome, degenerative disc disease, and fatigue. (Doc. No. 18-3, p. 20; Doc. No. 18-7, p. 20.) Plaintiff claimed that these conditions impaired him and limited his ability to work and live a normal life. (Doc. No. 18-7, p. 33.)

In March 2023, the SSA denied Plaintiff's application. (Doc. No. 18-3, p. 18.) Plaintiff petitioned for rehearing, but upon rehearing the SSA again denied his application. *Id.* Following that second denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and that hearing was held on November 13, 2023. *Id.* The ALJ issued a decision finding that Plaintiff "has not been under a disability, as defined by Section 223(d) of the Social Security Act, at any time since December 4, 2020, the alleged onset date of disability." *Id.* at 30. That decision became the final decision of the Commissioner. (Doc. No. 24, p. 3.)

## B. *The ALJ's decision.*

In reaching his decision, the ALJ conducted the five-step sequential evaluation required by 20 C.F.R. § 404.1520(a)(4) and made findings at each stage. (Doc. No. 18-3, p. 19.) First, he found that Plaintiff met the Social Security Act's insured status requirement. *Id.* at 21. Second, he found that Plaintiff had not engaged in substantial gainful activity since December 4, 2020, (the date he allegedly became impaired) because his earnings "d[id] not rise to the level of substantial gainful activity for that year." *Id.* Third, the ALJ found that Plaintiff did have severe impairments, namely lumbar spine disorder, PTSD, anxiety, borderline personality disorder, and a history of substance abuse. *Id.* The ALJ did not find, however, that the combination of these impairments constituted a "listed impairment" under 20 C.F.R. § 404.1520(d).

Because the ALJ found that Plaintiff did not satisfy Step Three of the sequential evaluation, he proceeded with the analysis. After Step Three, he found that Plaintiff had the residual functional capacity ("RFC") to work at a "light exertional level" as defined by 20 C.F.R. § 404.1567(b) (Doc. No. 18-3. p. 22), but found at Step Four that this "light exertional level" was insufficient to allow Plaintiff to continue doing his past relevant work as a recruiter, plumber, air traffic control specialist, and insurance sales agent. *Id.* at 29. The ALJ nonetheless found that

Plaintiff could still do other work, such as an information clerk, in the national economy. Thus Plaintiff's claim failed at Step Five, and the ALJ determined that Plaintiff was not eligible for disability benefits or disability insurance. *Id.* at 30.

### C. *Plaintiff's appeal and the Commissioner's response.*

Plaintiff appealed the ALJ's decision to this Court under 42 U.S.C. § 405(g).[1] (Doc. No. 1.) In challenging the decision, he contends that the ALJ did not properly assess the prior administrative medical findings ("PAMFs") of Dr. Henry Hanna, Ph.D., and Dr. Yamir Laboy, Psy.D. *See* Doc. No. 22, pp. 3-5. Plaintiff argues that while the ALJ considered some portions of Doctors Hanna and Laboy's assessments, he neglected others. *Id.* at 3-4. Specifically, he asserts that the ALJ found Doctors Hanna and Laboy's findings inconsistent without fully explaining why. *Id.* The ALJ's analysis was insufficient, Plaintiff argues, because the ALJ cited and referenced his analysis in "Finding 3" instead of repeating it in the same paragraph discussing Doctors Hanna and Laboy's opinions. *Id.* at 4. Plaintiff contends that if the ALJ had properly "evaluated the consistency and supportability factors, he may have reached a different conclusion." *Id.* at 5.

Responding, the Commissioner counters that the ALJ "explicitly articulated why he found the PAMFs of [Doctors Hanna and Laboy] partially unpersuasive, specifically with respect to their findings that Plaintiff had moderate limitations in each of the 'paragraph B' criteria." (Doc. No. 24, pp. 7-8.) In doing so, the Commissioner argues, "the ALJ's decision shows that he properly evaluated the PAMFs in question in accordance with the requirements of 20 C.F.R. § 404.1520c." *Id.* at 5.

---

[1] The parties did not consent to magistrate judge jurisdiction over the entire case. As such, the case has been referred to the undersigned for case management and recommendations on dispositive matters. *See* 28 U.S.C. § 636.

The only issue here is whether the ALJ properly considered and discussed the opinions of Doctors Hanna and Laboy in compliance with 20 C.F.R. § 404.1520.

### D. Governing law.

#### 1. Standard of review.

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the decision applied the proper legal standard. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Perez*, 415 F.3d at 461 (cleaned up). This means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In applying this standard, "'[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.'" *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Rather, the court must scrutinize the record to determine whether substantial evidence is present. *Id.* at 135 ("Conflicts in the evidence are for the Commissioner to resolve."). The Commissioner's decision is "granted great deference and will not be disturbed unless a reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir.

2001) (cleaned up).  "If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed." *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL 4138406, at *2 (S.D. Tex. Sept. 10, 2021) (Palermo, M.J.) (cleaned up).  The reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

### 2. *Qualification for benefits.*

To qualify for disability or disability insurance benefits, "a claimant must suffer from a disability." *Copeland*, 771 F.3d at 923.  A disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled for the purposes of disability insurance and thus entitled to disability benefits, the ALJ employs a five-step approach which considers whether:

> "(1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work."

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citing *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)); 20 C.F.R. § 404.1520.  The initial burden of proof lies with the claimant on the first four steps.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  At Step Five, however, the burden shifts to the Commissioner, who must show that the claimant can perform other substantial work in the national economy.  *Id*.  The ALJ may cease the analysis at any step if he or she finds that the claimant is (or is not) disabled.  *See Copeland*, 771 F.3d at 923.

Step Three is the contested portion of the sequential analysis here: whether Plaintiff's impairment meets the severity of an impairment enumerated in the relevant regulation. Step Three requires the ALJ to review all medical opinions and PAMFs in the record. 20 C.F.R. § 404.1520(a)(3). But for claims filed after March 27, 2017, the ALJ is not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a). Plaintiff filed his claims in March 2023, *see* Doc. No. 1, p. 1, so the ALJ was not required to give deference or weight in his findings to any PAMFs in the record.

ALJs must, however, consider "a list of factors" to "determin[e] what weight, if any, to give a medical opinion." *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021). Those factors include supportability, consistency, relationship with the claimant, specialization, and an "other" factor that looks to whether there is any evidence showing a medical source has familiarity with the evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5). While there are at least five factors to consider, the ALJ need only address supportability and consistency to comply with the regulations. 20 C.F.R. § 404.1520c(b)(2).

The more consistent a medical opinion or prior administrative finding is, the more persuasive the medical finding will be. 20 C.F.R. § 404.1520c(c)(2). An adequate explanation of supportability and consistency is one that "enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett v. Kijakazi*, No. 4:20-cv-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (Edison, M.J.) (cleaned up).

*E. Analysis.*

Only one aspect of the ALJ's decision is at issue in this appeal: whether the ALJ sufficiently considered the opinions of Doctors Hanna and Laboy during his analysis at Step Three of the sequential evaluation. At Step Three, the ALJ makes findings about whether the claimant's impairments meet the severity of an impairment enumerated in the relevant regulations. If the impairments do meet that severity level, the claimant is disabled. Here, the ALJ found that Plaintiff's impairments fell short of a listed impairment, and therefore did not find Plaintiff disabled at Step Three. (Doc. No. 18-3, pp. 21-22.)

Plaintiff argues that the ALJ, in reaching his conclusion that Plaintiff was not disabled, did not properly consider the opinions of Doctors Hanna and Laboy at Step Three. (Doc. No. 22, p. 4.) Plaintiff asserts that the ALJ's Step Three analysis was insufficient because the ALJ simply referred to his Step Two analysis without making specific reference to the opinions of Doctors Hanna and Laboy in that earlier section. *Id.* ("In the ALJ's evaluation at 'Finding 3,' he failed to discuss the opinions of Dr. Hanna or Dr. Laboy.")[2] The ALJ's Step Three findings regarding Doctors Hanna and Laboy's PAMFs are confined to one paragraph:

> I considered the findings of State psychological consultants (Henry Hanna, PhD, and Yamir Laboy, PsyD), who in March 2023, upon initial review, and in May 2023, upon reconsideration, found that Claimant had a mental impairment (an anxiety disorder, "severe" / "non-severe"), resulting in a mental residual functional capacity limiting him to the performance of work activity at no more than the semi-skilled level (1A7, 4A5). The findings are persuasive because the consultants presented objective medical evidence and supporting explanation to support the findings, and the findings are consistent with evidence from other medical sources (summarized above). See, e.g., 12F8, 15, 23, 29, 31-32; 13F5, 7, 22, 30, 35, 53, 60; 14F6; 15F1, 4, 10, 12, 15; 16F35, 40, 48, 55; 18F52, 55, 105). However, their findings that Claimant has moderate limitation in all four functional areas of § 1520a is not persuasive for reasons discussed under Finding 3 above. Notably,

---

[2] The ALJ's decision somewhat confusingly refers to the Step Two analysis as "Finding 3." *See* Doc. No. 18-3, pp. 21-22.

> they found moderate limitation in Claimant's ability to interact, yet inconsistently found no corresponding limitation regarding Claimant's mental RFC.

(Doc. No. 18-3, p. 29.)

As the ALJ stated, his analysis on Plaintiff's impairments was conducted in his resolution of Step Two (which he referred to in his decision as "Finding 3"). *Id.* There, the ALJ determined that Plaintiff had severe impairments, including a severe mental impairment. (Doc No. 18-3, p. 21.) The ALJ noted at Step Two that "[i]n finding that [Plaintiff's] mental impairment is 'severe,' I applied the special technique of [20 C.F.R.] § [404.]1520a" to determine if Plaintiff is disabled. *Id.* The ALJ explained in a footnote that the special technique in 20 C.F.R. § 404.1520a looks to the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* at 21 n.17.

The ALJ accordingly made findings in each of these four broad functional areas, citing exhibits in the process. (Doc No. 18-3, pp. 21-22.) Among the exhibits he cited were the office treatment records from the Veteran Affairs South Texas Health Care System (Exs. 12F, 13F, 14F, 15F, 16F), progress notes from North Central Federal Clinic (Ex. 10F), documents from a workers' compensation and disability proceeding from Lincoln Financial Group (Ex. 18F), and Plaintiff's self-submitted function report (Ex. 7E). *Id.*

First, the ALJ found that Plaintiff had mild limitation in understanding, remembering, or applying information. (Doc. No. 18-3, p. 21.) The ALJ noted that while Plaintiff subjectively reported that he had difficulty with these things, he reported that he could drive, shop, pay bills count change, and handle money. *Id.* Further, the ALJ acknowledged that Plaintiff's mental status examinations throughout the course of his treatment indicated that he "routinely exhibited

8 / 14

full orientation, an alert demeanor, intact memory, coherent speech, logical and goal-directed thought process, average intelligence, and no perceptual abnormalities." *Id.* (citing Ex. 12F, pp. 8, 15, 23, 29, 31-32; Ex. 13F, pp. 5, 7, 22, 30, 35, 53, 60; Ex. 14F, p. 6; Ex. 15F, pp. 1, 4, 10, 12, 15; Ex. 16F, pp. 35, 40, 48, 55; Ex. 18F, pp. 52, 55, 105).

Second, the ALJ found that Plaintiff had mild limitation in interacting with others. (Doc. No. 18-3, p. 21.) Although Plaintiff reported having trouble with family, friends, and neighbors, the ALJ noted that Plaintiff reported spending time with others, and in clinical exams he "frequently demonstrated cooperative behavior with good eye contact, even despite periodic mood abnormalities." *Id.* (citing Ex. 10F, pp. 40-42; Ex. 12F, p. 22; Ex. 13F, pp. 7, 22, 30, 35, 53, 60; Ex. 14F, p. 6).

Third, the ALJ found that Plaintiff had moderate limitation in concentrating, persisting, or maintaining pace. (Doc. No. 18-3, p. 21). The ALJ noted that while Plaintiff reported that he had difficulty concentrating, there was no clinical evidence to support that he was hyperactive, inattentive, or in need for redirection. *Id.* At his clinical visits he demonstrated good concentration, normal "psychomotor activity and a normal attention span." *Id.* (citing Ex. 12F, pp. 8, 15, 23, 29, 31-32; Ex. 13F, pp. 5, 7, 22, 30, 35, 53, 60; Ex. 14F, p. 6; Ex. 15F, pp. 1, 4, 10, 12, 15; Ex. 16F, pp. 35, 40, 48, 55; Ex. 18F, pp. 52, 55, 105).

Fourth, the ALJ found that Plaintiff had mild limitation in adapting or managing himself. (Doc. No. 18-3, p. 22.) The ALJ noted that while Plaintiff reported having trouble handling stress, he was able to engage in significant life activities without restrictions, such as caring for his daughter, feeding himself, preparing meals, driving, shopping, managing finances, spending time with others. *Id.* (citing Doc. No. 18-7, p. 33). These observations carried over into the clinical setting as well, where it was reported that Plaintiff had adequate grooming, reasonable

insight and judgment, and no suicidal thoughts.  (Doc. No. 18-3, p. 22) (citing Ex. 12F, pp. 8, 15, 23, 29, 31-32; Ex. 13F, pp. 5, 7, 22, 30, 35, 53, 60; Ex. 14F, p. 6; Ex. 15F, pp. 1, 4, 10, 12, 15; Ex. 16F, pp. 35, 40, 48, 55; Ex. 18F, pp. 52, 55, 105).

After assessing all four of these broad functional areas, and combining Plaintiff's mental impairments with his physical ones, the ALJ found at Step Three that Plaintiff did not have "an impairment (or a combination of impairments) that m[et] or medically equals the severity criteria of a listed impairment."  (Doc. No. 18-3, p. 22.)

The ALJ had three requirements in making his Step Three findings with regard to Doctors Hanna and Laboy's opinions.  First, he had to consider those opinions.  20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").  Second, he was required to address and explain how he considered the supportability and consistency factors of Doctors Hanna and Laboy's opinions in making his findings.  20 C.F.R. § 404.1520c(b)(2) ("Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").  Third, the ALJ's decision had to be supported by substantial evidence, and he had to apply the proper legal standards.  *Copeland*, 771 F.3d at 923 (cleaned up).

Examination of the ALJ's consideration of Doctors Hanna and Laboy's opinions reveals that the ALJ fulfilled all three of these requirements at Step Three.  The ALJ made specific reference to Doctors Hanna and Laboy's opinions and noted that he found aspects of them persuasive (Doc. No. 18-3, p. 29), and he addressed supportability and consistency in the process.  The ALJ explained that their opinions were supportable because they "presented

objective medical evidence and supporting explanations to support the[ir] findings." *Id.* He also stated that Doctors Hanna and Laboy's findings were consistent with evidence from other medical sources, and he cited multiple documents in the record that were consistent with their opinions. *Id*. (citing Ex. 12F, pp. 8, 15, 23, 29, 31-32; Ex. 13F, pp. 5, 7, 22, 30, 35, 53, 60; Ex. 14F, p. 6; Ex. 15F, pp. 1, 4, 10, 12, 15; Ex. 16F, pp. 35, 40, 48, 55; Ex. 18F, pp. 52, 55, 105).

In diverging from Doctors Hanna and Laboy's opinions, however, the ALJ provided an evidentiary basis for why he did not adopt their findings, namely his Step Two analysis. There, as previously recounted, the ALJ discussed objective evidence from the record and Plaintiff's subjective testimony. For example, in the first of the four broad functional areas—Plaintiff's ability to understand, remember, or apply information—Plaintiff subjectively reported that he had difficulty with these things. The ALJ noted, however, that Plaintiff also reported that he could drive, shop, pay bills count change, and handle money. (Doc. No. 18-3, p. 21) (citing medical records from VA clinical exams and visits).

While the ALJ considered Plaintiff's subjective testimony, he noted that Plaintiff exhibited behavior that suggested he had a mild impairment, not a moderate impairment as Doctors Hanna and Laboy opined. Further, the ALJ explained that Plaintiff's examinations throughout the course of his treatment indicated that he "routinely exhibited full orientation, an alert demeanor, intact memory, coherent speech, logical and goal-directed thought process, average intelligence, and no perceptual abnormalities." (Doc. No. 18-3, p. 21) (citing Ex. 12F, pp. 8, 15, 23, 29, 31-32; Ex. 13F, pp. 5, 7, 22, 30, 35, 53, 60; Ex. 14F, p. 6; Ex. 15F, pp. 1, 4, 10, 12, 15; Ex. 16F, pp. 35, 40, 48, 55; Ex. 18F, pp. 52, 55, 105). All of these findings were supported by findings in the medical records. *See* Doc. 18-13, pp. 9-10 ("[Plaintiff] was dressed appropriately. Insight and judgment were fair. Thought content was logical and goal directed.

Mood was euthymic with congruent affect; auditory or visual hallucinations were not endorsed.").

The ALJ followed the same procedure for rating Plaintiff's functional limitations in each of the four broad functional areas, making citations to the record in the process. *See* Doc. No. 18-3, pp. 21-22. And in assigning little weight to Doctors Hanna and Laboy's findings, he specifically mentioned that he was diverging from their opinions about Plaintiff's ability to interact. *Id.* at 22. The ALJ explained that he was doing so because while Doctors Hanna and Laboy found that Plaintiff had a moderate limitation in interacting, they did not have the same opinion about his mental residual functioning capacity, something the ALJ found to be contradictory. *Id.* at 22. Accordingly, the ALJ reasoned that Doctors Hanna and Laboy's opinions lacked consistency, and he chose to assign those opinions less weight in his findings.

Contrary to Plaintiff's argument (Doc. No. 22, p. 5), the ALJ did not rest his findings on boilerplate language but instead based them in reports and evidence in the record. *Erlandsen v. O'Malley*, No. 4:23-CV-83, 2024 WL 898915, at *4 (E.D. Tex. Feb. 14, 2024), *adopted*, No. 4:23CV83, 2024 WL 897598 (E.D. Tex. Mar. 1, 2024) ("Boilerplate language divorced from the evidence in the record is generally insufficient to satisfy the ALJ's obligation."). When an ALJ makes specific references to locations in the record, this is usually sufficient analysis in addressing the persuasiveness factors. *E.g.*, *De La O v. Bisignano*, No. EP-25-CV-00033, 2025 WL 2231789, at *4-6 (W.D. Tex. Aug. 5, 2025) (one-sentence analysis for consistency was adequate where it included reference to a specific citation and to the "overall record"); *but see Stephen R. v. O'Malley*, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. July 23, 2024) (concluding that the ALJ's discussion was not sufficient where "[n]owhere did he reference or describe to what evidence he was referring").

While the ALJ's paragraph discussing Doctors Hanna and Laboy's findings was itself sufficient, he also cited his Step Two analysis (which he referred to as "Finding 3") to support his position. (Doc. No. 18-3, p. 21). ALJs need not "follow formalistic rules in [their] articulation" to explain their findings, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994), and the ALJ here was not required to restate his full prior analysis in his discussion of Doctors Hanna and Dr. Laboy's opinions.

Courts throughout the Fifth Circuit have looked to analysis elsewhere in the ALJ's report to assess whether they adequately discussed the persuasiveness factors. *E.g.*, *De La O*, 2025 WL 2231789, at *6 ("although in the paragraphs dedicated to his persuasiveness analysis, the ALJ did not in so many words explain why he found that Medina's opinions were inconsistent with the overall record, his analysis together with his discussion of Dr. Rattan's report in different parts of his decision is adequate to provide a basis for meaningful judicial review"); *Venegas v. O'Malley*, No. EP-24-CV-00001, 2024 WL 5182647, at *9 (W.D. Tex. Dec. 13, 2024) (the ALJ did not err in her persuasiveness analysis where she discussed exhibits and other relevant evidence "elsewhere in her decision"), *adopted*, 2025 WL 28660 (W.D. Tex. Jan. 3, 2025); *Acosta v. Kijakazi*, No. EP-22-CV-00417, 2023 WL 6135687, at *4-5 (W.D. Tex. Sept. 19, 2023) (concluding that the ALJ adequately explained the consistency factor where the ALJ stated that opinions were "consistent with the treatment record" and "[t]hroughout his written decision, the ALJ discussed various . . . treatment notes" from that clinic).

Accordingly, the ALJ did not need to restate his Step Two analysis. His reference to that prior analysis was sufficient.[3]

---

[3] The ALJ's opinion also contained a very detailed analysis of the record in his findings of Plaintiff's RFC. (Doc. No. 18-3, pp. 22-29.) That discussion, combined with his findings at Step Two, provide substantial insight into why

### F. Conclusion and recommendation.

The ALJ's decision complied with the regulations and was based on substantial evidence in the record and the proper legal standards. The district court should therefore:

- AFFIRM the Commissioner's decision; and
- DISMISS Plaintiff's appeal with prejudice.

### G. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on October 15, 2025.

_____
MITCHEL NEUROCK
United States Magistrate Judge

---

the ALJ did not find Plaintiff mentally impaired and disabled. But the analysis in the ALJ's Step Two discussion and the paragraph discussing Doctors Hanna and Laboy's opinions was sufficient to satisfy 20 C.F.R. § 404.1520.